CITY OF RIVERVIEW *v.* CITY OF TRENTON.

1. TOWNSHIPS—OFFICERS—RESIDENCE.
    Incumbent township officers must be residents of the township of which they are officers (CL 1948, § 41.103).

2. SAME—OFFICERS—VACATION OF OFFICE—RESIDENCE—INCORPORATION OF CITY.
    Township offices became vacated when township territory in which the incumbents resided became incorporated as a city (CL 1948, § 41.103).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 52 Am Jur, Towns and Townships § 16.
[2-6] 52 Am Jur, Towns and Townships § 46.

3. MUNICIPAL CORPORATIONS—INCORPORATION OF HOME-RULE CITY—
ASSUMPTION OF TOWNSHIP'S LIABILITIES.

A home-rule city's duty to assume township's liabilities upon
incorporation from part of township territory is determined as
of the date of its incorporation and such duty is limited to a
partial assumption of township's liabilities which then existed
(CLS 1956, § 117.14).

4. TOWNSHIPS—OFFICERS—INCORPORATION OF HOME-RULE CITY—SAL-
ARIES—APPORTIONMENT.

Salaries of township officers who were elected to fill vacancies
created by incorporation of new home-rule city from township
territory were not subject to apportionment between the town-
ship and the city (CL 1948, § 41.103; CLS 1956, § 117.14).

5. MUNICIPAL   CORPORATIONS—HOME-RULE   CITY—INCORPORATION—
ASSUMPTION OF TOWNSHIP'S LIABILITY.

The term "liabilities," as used in statute entitling a newly-
incorporated home-rule city to assume a pro rata share of
township's personal property and requiring it to assume a like
share of its liabilities as of date of incorporation, includes
the contingent liability of the township for salaries of incum-
bent township officers who remain in office after the incorpora-
tion, as the obligation is in existence on the date of incorpora-
tion (CLS 1956, § 117.14).

6. TOWNSHIPS—INCORPORATION OF HOME-RULE CITY—APPORTIONMENT
OF LIABILITIES—JURISDICTION.

A decree in suit for apportionment of township's liabilities upon
incorporation of new home-rule city from township territory
should reserve jurisdiction to determine apportionment of
township's liability for payment of salary to incumbent town-
ship officer who remained in office after the incorporation
(CLS 1956, § 117.14).

7. COSTS—PUBLIC QUESTION—APPORTIONMENT OF TOWNSHIP'S LIA-
BILITIES.

No costs are allowed in suit to apportion township's liabilities
upon incorporation of home-rule city, a public question being
involved (CLS 1956, § 117.14).

Appeal from Wayne; Toms (Robert M.), J. Sub-
mitted January 5, 1960. (Docket No. 12, Calendar
No. 47,937.) Decided February 26, 1960. Rehearing
denied April 11, 1960.

Bill by Township of Monguagon, with action con-
tinued by and in the name of its successor, City of

Riverview, a municipal corporation, against the City of Trenton, a municipal corporation, for declaratory decree relative, *inter alia,* to allocation of liability for officials' salaries following annexation of territory by defendant. Decree entered determining such salaries not to constitute liability necessitating prorating. Plaintiff appeals. Reversed as to salary of one elected official who retained office, and remanded for determination of incurred liability.

*Anthony F. Leone* (*William S. Munger* and *J. Lynn Fewless,* of counsel), for plaintiff.

*Oldani, Raubolt & MacDonald,* for defendant.

Souris, J. Section 14 of PA 1909, No 279, as amended (CLS 1956, § 117.14 [Stat Ann 1957 Cum Supp § 5.2093]), a part of the so-called home-rule act, provides in part:

"Whenever a new city shall be incorporated, the personal property of the township from which it is taken shall be divided and its liabilities assumed between such city and the portion of the township remaining after such incorporation, which incorporation shall be effective as of the date of filing the certified copy of the charter as hereinafter provided, in the same ratio as herein provided in case of the annexation of a part of a township to a city."

The question to be decided in this case is whether or not elected township officials' salaries are "liabilities" within the meaning of the act, as quoted above, such that a new city incorporated from a portion of a township is required to pay part of the township officials' salaries after the date of incorporation of the new city.

Defendant city of Trenton was incorporated as a home-rule city from territory comprising a major part of Monguagon township, plaintiff. Subsequent

to commencement of this case, the remaining portion of the township became incorporated as the city of Riverview. Appropriate amendment of the pleadings and title of this case followed.

The ratio referred to in the statutory provision quoted above is the same ratio as the assessed valuation of the taxable property in the territory incorporated as a city bears to the assessed valuation of the taxable property in the entire township from which said territory is taken. By stipulation, it was agreed by the parties that the assessed valuation of the taxable property in the defendant city of Trenton comprised 87.62% of the assessed valuation of the taxable property in the entire township prior to defendant's incorporation. The parties likewise agreed that the personal property of the township to be divided and the liabilities of the township to be assumed by the defendant city and the remaining portion of the township shall be in the ratio of 87-.62% and 12.38%, respectively. Apparently, the parties had no difficulty dividing the personal property of the township and allocating its liabilities, except those items claimed here to be liabilities, in the ratio stipulated. Thus far, but no further, did the parties agree.

The items in dispute are the salaries which plaintiff township was obliged to pay its supervisor, treasurer, clerk, and 4 trustees on and after July 31, 1957, the date defendant city's incorporation became effective. Four months prior thereto a complete slate of township officers had been elected to serve 2- and 4-year terms at the same salaries paid to their predecessors. However, upon incorporation of defendant city all township offices, except that of treasurer, became vacated because the incumbents in those offices were residents of the township territory which became the city of Trenton. See CL 1948, § 41.103 (Stat Ann § 5.152), which requires

residence within a township as one of the qualifications for township office. All township offices, except that of treasurer, remained vacant from July 31st until October 8, 1957, when successors were elected at a special township meeting called for that purpose by the county board of supervisors, pursuant to CL 1948, § 41.24 (Stat Ann § 5.24). Plaintiff township claims that defendant city should be required to assume and pay 87.62% of the salaries for all of such officers from and after July 31st, in the case of the treasurer, and October 8th, in the cases of the other officers, to the end of each officer's 2- or 4-year term, pursuant to the disputed statutory provision. This suit for declaratory judgment, pursuant to the provisions of CL 1948, § 691.501 (Stat Ann § 27.501), was instituted on December 20, 1957, by the township.

Plaintiff's claim, as it relates to the salaries of its officials other than its treasurer, is without merit. On July 31, 1957, 6 of the 7 township offices were vacant. There were then no incumbents in those 6 township offices to whom plaintiff could be liable for salaries then or *in futuro*. As a matter of fact, those 6 vacancies were not filled until October 8, 1957, at which time, and only then, did plaintiff incur any obligation which could ever ripen into a liability to pay salaries to the holders of the 6 offices involved. Defendant city's duty to assume liabilities of plaintiff township from which its incorporated territory was taken is determined as of July 31, 1957, the date of its incorporation, and its duty is limited to partial assumption of those liabilities of the township which then existed. See *Township of Dearborn* v. *City of Dearborn,* 308 Mich 284, where this Court so held in an annexation case arising out of another similar provision of the same statute here in dispute.

On October 8, 1957, but prior to the special election held on that date, the township electors voted to reduce the salaries to be paid to the 6 officials to be

elected (but they did not vote to reduce the incumbent treasurer's salary). Plaintiff now claims that the action of its electors in reducing such salaries violated article 16, § 3, of the Constitution of the State of Michigan (1908) and CLS 1956, § 41.95 (Stat Ann 1957 Cum Supp § 5.82). Decision on this claim is unnecessary to disposition of this appeal, in the light of our holding that the salaries of the 6 officials elected in October, 1957, are not subject to apportionment between the township and the city.

The treasurer's salary presents a different problem. The treasurer resided in a portion of the township not incorporated by defendant city and, consequently, remained in office on July 31, 1957. The question hereafter considered is whether salaries of incumbent elected township officials are township liabilities subject to apportionment within the meaning of the statutory language quoted at the beginning of this opinion.

The trial judge ruled that such salaries are contingent or deferred liabilities not subject to apportionment under the statute. He said:

"To directly approach the question which appears to be controlling, the court is of the opinion that it is the law of this State that current operating expenses not yet incurred or liquidated or final, are not liabilities which can be apportioned under this statute. By this I mean such items as light, rent, supplies, snow removal, auditing expenses, legal expenses, expenses of regular and special elections, if any, and salaries. Respectable authority is presented holding that these items are not liabilities within the contemplation of this statute, and that they are merely contingent or deferred liabilities, the amount of which cannot be determined now and which may become greater or less with the passing of time and the occurrence of subsequent events. I do not think it is the function of this court to project its jurisdiction into the future and to retain the

right indefinitely to determine piecemeal and from time to time, as the occasion may arise, whether or not a contingent liability has become a fixed liability. This would seem an interminable job and would be most disturbing and upsetting to anyone attempting to set up a fiscal policy for either the township or the city. It is fraught with intangibles, with imponderables and any attempt to formulate a financial policy or to make long-range financial plans by either the township or the city, would be seriously hampered by the constant uncertainty arising from the possible impact of contingent and deferred liabilities. With this judicial conclusion the court believes that a decree may be entered leaving many of the debatable items that have been presented, unsolved."

All of the facts involved herein were stipulated at the trial in the circuit court. Both parties, however, offered testimony of certified public accountants with respect to how such items should be treated, for accounting purposes, in preparing a balance sheet for a township. Basing his opinion upon certain assumptions, which included the assumption that township officers in all events would render services during their entire elected term to the township, plaintiff's accountant testified that under such circumstances the amount of their salaries during the period involved would be treated by accountants as contingent liabilities. In the ordinary situation, however, where rendition of future services by officials is as uncertain as sudden death, resignation, or other disqualification from office, plaintiff's accountant testified that the amount of the liability could not be evaluated, and, consequently, he would note on the balance sheet that "the assets of the township would be encumbered by some unknown amount," depending upon contingencies which would be stated. Defendant city's accountant agreed that such salaries would be contingent liabilities if plain-

tiff's accountant's assumption were valid (that services in all events would be rendered), but he testified that such contingent liabilities appear properly in balance sheets only as footnote items which state that upon the happening of described events an expense will be incurred. He further testified that salaries of elected officials, for balance sheet purposes, "are never set up as liabilities at the time when the official is elected to his office."

Fortunately, we need not rely solely upon the testimony offered by the parties' accountants, for this Court previously has considered the statutory provision here in dispute and previously has ruled that the term "liabilities," as used in the statute, does include contingent liabilities. In *Township of Dearborn* v. *City of Dearborn, supra,* and in *Hazel Park Association* v. *Township of Royal Oak,* 317 Mich 607, there were involved special assessment bonds on which the townships incurred obligations (pursuant to statute) to advance money from their general funds to pay such bonds in the event that the special assessment funds were insufficient to pay such bonds and interest when they became due. In the *Dearborn Township Case,* we said, beginning at page 293:

"A contingent liability to advance funds sufficient to satisfy any past due special assessment bond obligations was imposed upon and assumed by the township on the date the bonds were issued. Such liability continues, under the circumstances of this case, until the bond obligation is satisfied, including liability on refunding bonds issued in lieu of the special assessment bonds. And this liability must be shared proportionately by the city, which has annexed part of the township territory after the special assessment bonds were issued, and the remaining portion of the township. The right of the township to enforce contribution by the city, which subsequent to issuing the bonds annexed part of the township,

accrued as soon as it became reasonably certain that receipts from the special assessments would be inadequate to satisfy in full the bond obligation. That condition arose in the instant case prior to the commencement of this suit. In effect it is so stipulated by the parties litigant."

At page 295 of that opinion appears the following:

"While it does not appear in the instant case that the township has actually paid from its general funds the amount in default on the special assessment bonds of districts 1 and 2, nonetheless it does convincingly appear that the township is presently obligated to make such payment. In 1938 it issued general obligation township bonds in refunding outstanding special assessment bonds. And further it appears quite beyond doubt that funds sufficient to meet the default on the special assessment bonds cannot be obtained either from unpaid special assessments already levied or from reassessments. In fact it is so stipulated by counsel. For the purpose of plaintiff's right to bring the instant suit, the above circumstances are, we think, tantamount to plaintiff township having actually paid the defaulted assessments from its general funds. But for the purpose of covering the contingency of future payment of special assessments or reassessments in either district 1 or 2, and in event defendant city has contributed its proportionate share to the payment of these bonded obligations, the decree to be entered in the instant case may provide that any money subsequently collected on the special assessments or on reassessments in either of these 2 districts by the township shall be shared proportionately by the township and the city."

In the *Royal Oak Township Case, supra,* we said the following, at page 625:

"The township's liability as guarantor cannot be said to arise before the bonds are issued and delivered. It is claimed that liability did not arise until

the subsequent happening of the contingency, *i.e.,* defaults and lack of special assessment funds. However, the township's liability, although contingent, was there continuously from the time of the delivery of the bonds. It is implied in *Township of Dearborn* v. *City of Dearborn, supra,* that this liability arises when the bonds are issued."

Other contingent liability cases arising out of the disputed statute here involved are *Township of Royal Oak* v. *City of Pleasant Ridge,* 295 Mich 284, and *Township of Royal Oak* v. *City of Pleasant Ridge,* 307 Mich 714.

Both of the foregoing cases likewise concerned bond obligations, but the contingent nature of each obligation, affecting the issue of ultimate liability as well as the amount thereof, is identical with the contingent nature of a township's obligation to pay salaries to its incumbent elected officials upon their rendition of services after the incorporation of a city within the township. Here, plaintiff's liability would not become actual or fixed in the event such services were not rendered after July 31, 1957 (as indeed in the case of all elected officials except the township treasurer, such services were not rendered); and the amount of the liability would not become known until, and as, the services were actually rendered. Whether we are concerned with bonds or salaries, an obligation exists on the date of annexation or incorporation, as the case may be, by which the township involved might be compelled later to pay its funds in satisfaction of such pre-existing obligation. In the cases cited above, this Court has described such obligations as contingent liabilities, and it has held that they are included within the meaning of the statutory provision quoted at the beginning of this opinion. This Court now holds that a township's obligation to pay its incumbent elected officials' salaries is a contingent liability

and that such obligation is a liability subject to apportionment pursuant to that statutory provision.

At the time of the trial judge's opinion, July 2, 1958, there remained 9 months of the township treasurer's then current 2-year term of office. He already had served 15 months at the rate of $5,687 per annum, 11 of which months were served from and after July 31, 1957, the date of defendant city's incorporation. As in the *Dearborn Township Case, supra,* while it does not appear in the instant case from the record before us that plaintiff township actually had paid him his salary for the 11 months he had served following July 31, 1957, nevertheless the township was then obligated to make such payment if it had not done so already. For the purpose of plaintiff's right to relief in this suit, we think the trial court should have found plaintiff entitled to contribution from defendant city in the stipulated ratio for the treasurer's salary during those 11 months. Further, as was suggested in *Township of Royal Oak* v. *City of Pleasant Ridge,* 295 Mich 284, at page 293, we think the decree in the instant case should have reserved jurisdiction to determine the apportionment of plaintiff's liability for the payment of salary to its treasurer during the 9 months then remaining in his term of office in the event he performed services therefor. His term now having expired, the decree entered below is hereby reversed and the case remanded to the circuit court for further proceedings therein to determine the extent of the liability actually incurred by plaintiff for the services of its township treasurer from July 31, 1957, to April 1, 1959, and to apportion said liability in accordance herewith.

No costs shall be allowed, a public question being involved.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.